UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CEDRIC RAYNARD JOYCE, #251901,

                Plaintiff,

    v.

DENNIS BERGERON, et al.,

                Defendants.

_____/

Case No. 2:21-cv-70

Hon. Jane M. Beckering
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.    Introduction

This Report and Recommendation (R&R) addresses Defendants'[1] motions to dismiss and for summary judgment based on Plaintiff's failure to exhaust his administrative remedies.  (ECF No. 24.)

Plaintiff — state prisoner Cedric Raynard Joyce — filed suit pursuant to 42 U.S.C. § 1983 on April 8, 2021.  In his verified complaint, Joyce asserts that while he

---

[1]    Joyce named eighteen Defendants in his Complaint.  They are: (1) Corrections Officer (CO) Bergeron, (2) Sergeant (Sgt.) Anderson, (3) CO Collins, (4) CO Paquin (named as "Pacquin" in Joyce's Complaint), (5) Prison Counselor (PC) Salomon (named as "Solomon" in Joyce's Complaint), (6) PC Plumm (named as "Plum" in Joyce's Complaint), (7) Assistant Deputy Warden (ADW) Batho, (8) Resident Unit Manager (RUM) Corey-Spiker, (9) CO Trestrail (named as "Trestall" in Joyce's Complaint), (10) Grievance Coordinator (GC) McLean, (11) CO Reinfelder (named as "Geinfelder" in Joyce's Complaint), (12) Sgt. Weston (named as "Westner" in Joyce's Complaint), (13) Sgt. Blemke, (14) CO Golladay, (15) Registered Nurse (RN) Hence (named as "Hense" in Joyce's Complaint), (16) Health Care Unit Manager (HCUM) LaPlaunt (named as "LaPhlant" in Joyce's Complaint), (17) RN Smith-Reinfelder (named as "Smith" in Joyce's Complaint), and (18) RN Cicco.  (ECF No. 1, PageID.3-7.)

was confined at Chippewa Correctional Facility (URF) in Kincheloe, Michigan, URF employees and health services staff acted with deliberate indifference to his serious medical needs on multiple occasions.  Specifically, Joyce says that Defendants failed to provide him with his rescue inhaler or "Keep on Person" medications while he was in administrative segregation, and that they ignored his pleas for help when breathing became progressively more difficult and painful for him.  (ECF No. 1, PageID.8-10.) Joyce further asserts that when he was having breathing difficulties on July 19, 2020, approximately two weeks after he was released from segregation, Defendants again refused him help and neglected to follow protocols when he was eventually permitted to go to health services.  (*Id.*, PageID.11-13.)

MDOC Defendants now move to dismiss and for summary judgment.  (ECF No. 24.)  Defendants argue that Joyce set forth insufficient factual allegations in his complaint to state claims against the following five Defendants:  CO Paquin, ADW Batho, CO Corey-Spiker, GC McLean, or HCUM LaPlaunt.  (ECF No. 25, PageID.214-216.)   Defendants further assert that Joyce failed to exhaust his deliberate indifference claim against PC Salomon for ignoring his pleas on June 22, 2020, and his deliberate indifference claims against Sgt. Blemke, CO Trestrail, CO Golladay, CO Reinfelder, Sgt. Weston, and RN Smith-Reinfelder for ignoring his pleas on July 19, 2020.[2]  (*Id.*, PageID.221-223.)  Joyce did not respond.

---

[2]    Joyce's claims against Sgt. Anderson, CO Collins, RN Hence, CO Bergeron, RN Cicco, and PC Plumm are not impacted by Defendants' motions.

The undersigned respectfully recommends that the Court: (1) grant Defendants' motion to dismiss with respect to CO Paquin, ADW Batho, RUM Corey-Spiker, GC McLean, and HCUM LaPlaunt because Joyce failed to set forth specific factual allegations against them in his complaint, (2) grant Defendants' motion for summary judgment with respect to Joyce's deliberate indifference claim against PC Salomon because there are no genuine issues of fact and Joyce failed to exhaust the claim, and (3) deny Defendants' motion for summary judgment with respect to Joyce's claims against Sgt. Blemke, CO Trestrail, CO Golladay, CO Reinfelder, and RN Smith-Reinfelder for acting with deliberate indifference to his medical needs on July 19, 2020 because there is a genuine issue as to whether the grievance process was available to Joyce.

For the sake of clarity, the undersigned's recommendation is summarized in the table below.

| No. | Defendant | Recommendation on Motion to Dismiss | Recommendation on Motion for Summary Judgment | Result |
|---|---|---|---|---|
| 1 | CO Bergeron | | | |
| 2 | Sgt. Anderson | | | |
| 3 | CO Collins | | | |
| 4 | CO Paquin | Grant | | Dismiss |
| 5 | PC Salomon | | Grant | Dismiss |
| 6 | PC Plumm | | | |
| 7 | ADW Batho | Grant | | Dismiss |
| 8 | RUM Corey-Spiker | Grant | | Dismiss |
| 9 | CO Trestrail | | Deny | |
| 10 | GC McLean | Grant | | Dismiss |
| 11 | CO Reinfelder | | Deny | |
| 12 | Sgt. Weston | | Deny | |

| No. | Defendant | Recommendation on Motion to Dismiss | Recommendation on Motion for Summary Judgment | Result |
|---|---|---|---|---|
| 13 | Sgt. Blemke | | Deny | |
| 14 | CO Golladay | | Deny | |
| 15 | RN Hence | | | |
| 16 | HCUM LaPlaunt | Grant | | Dismiss |
| 17 | RN Smith-Reinfelder | | Deny | |
| 18 | RN Cicco | | | |

## II.    Factual Allegations

Joyce says that on June 21, 2020, he was taken to segregation pending a misconduct hearing.  (ECF No. 1, PageID.8.)  That misconduct hearing was set for June 29, 2020.  When Joyce arrived at segregation, he was strip searched, asked about any health concerns he might have, and asked what meal he receives.  (*Id.*)  Joyce says that he told Sgt. Anderson and other nearby COs that he had problems with asthma, high blood pressure, and seizures, among other things.  (*Id.*)  Joyce asked if he could have his inhaler back, as he had been experiencing problems with his breathing and the temperature was above ninety degrees.  (*Id.*)  Joyce was told that he could not have his inhaler, and that he would have to talk to the Property Officer.

Joyce says that CO Collins then took him to his cell in segregation.  When they arrived, Joyce says he asked Collins to open a window because the heat was unbearable.  (*Id.*)  Collins said "yeah maybe" and returned twenty-five minutes later with a window crank.  (*Id.*)  However, the window crank was too short, and Collins

4

could not get the window open.  (*Id.*)  When Joyce told Collins that he has asthma, did not have his inhaler, and would not be able to breathe with the window closed, Collins told Joyce: "I'll tell somebody about the window and the nurse will be by." (*Id.*)  Joyce says that he gave staff his detail, which he had to keep in his pocket to receive his diet and special accommodations.

Joyce says that RN Hence came by later and Joyce told her that he was having breathing problems, did not have his inhaler, and did not have his keep on person medication for his high blood pressure and heart problems.  (*Id.*)  Collins told Joyce that RN Hence relayed that information to another staff member.  Joyce says that he continued to tell any staff members that came by that he needed assistance.  (*Id.*)

One of the staff members who passed by was RN Cicco.  Joyce says that he had previously written a grievance against her for threatening to spit in his drinking and medication cup, and that she was previously "written up" for withholding inmate's medication and placing her unwashed hands inside prisoner's pill cups, among other things.  (*Id.*)  But Joyce says that his breathing problems were so bad by this point that he asked Cicco for help.  Rather than helping, Cicco allegedly laughed at Joyce and used a racial slur against him.  (*Id.*)

On June 22, 2020, CO Bergeron performed a shakedown of Joyce's property to retrieve Joyce's inhaler, medication, and state-issued clothing and hygiene products. (*Id.*, PageID.9.)  Joyce says that prior to the shakedown, he had kited Bergeron about his inhaler and medication.  (*Id.*, PageID.8.)  But the inhaler that Bergeron sent back to Joyce had no canister, and the pill packets that Bergeron sent were empty.  (*Id.*,

5

PageID.9.)  Joyce says he informed Collins, Plumm, Salomon, and a non-Defendant nurse that his inhaler and pill packets were empty but that they did not help him. (*Id.*)  Joyce then wrote two medical requests.  He says that RN Cicco took the first request while waving and laughing at Joyce.  Joyce gave the second request to an unknown Case Manager.  (*Id.*)  The Case Manager reported back that URF health care had the request, but that the Case Manager could not retrieve the medication because he is not a medical provider.  (*Id.*)

Joyce says that on June 23, 2020, he was barely breathing.  (*Id.*)  He says that he had to lay on the floor next to the door in order to get any air to breathe.  Joyce says he was coughing and wheezing, and asking other inmates to get him medical help, all to no avail.  On June 24, 2020, Joyce wrote another health care request, which he says Nurse Smith-Reinfelder picked up.  (*Id.*)  By this time, Joyce says that his chest pain was excruciating, and he had lost consciousness multiple times.  Joyce says that he was finally given an inhaler and medication on June 24 or June 25, 2020. But despite his request he was never seen by a doctor.  (*Id.*)

According to Joyce, he remained in administrative segregation until July 3, 2020.  (*Id.*)  When he was released, he was given a property receipt to sign.  Joyce told the officer that there were discrepancies between the property in his pack up and the property on the receipt. (*Id.*) The non-Defendant officer gave Joyce his bag and told him to go.  Joyce says that while unpacking his bag, he found his original inhaler and medication.  (*Id.*, PageID.10.)  By then, Joyce had already initiated the grievance process.

After he was released from segregation, Joyce says that he continued to have breathing problems and chest pain.  (*Id.*, PageID.11.)  Joyce says that he submitted several kites about his medical issues.  Although Joyce sent some of these kites to mental health services in case his mental health medication was playing a role in his problems, health services intercepted those kites.  (*Id.*)  Joyce says that health services refused to pass on the information and sent back untruthful replies.

Joyce says that the morning of July 19, 2020, he was having breathing difficulties.  (*Id.*)  He says that he used his inhaler but had to walk two blocks to chow hall and back to his housing unit.  Joyce says that when he arrived at the chow hall he was light-headed and completely out of breath.  (*Id.*)  Joyce approached the officer desk in the chow hall and told Sgt. Blemke that he was having difficulties breathing, and that he had serious asthma.  Blemke allegedly told Joyce that he would have to go back to his housing unit and tell the officers there about his issues.  (*Id.*)

When he arrived back at his housing unit, Joyce says that he told CO Trestrail that he was having trouble breathing and needed to go to health services.  Instead of helping, CO Trestrail laughed at Joyce, directed Joyce to go back to his cell, and told Joyce that he would contact health services.  (*Id.*)  Joyce says he reminded Trestrail that he needed help several times by using the emergency button on the wall of his cell.  Joyce's cellmates also told Trestrail that Joyce needed help, to no avail.  (*Id.*, PageID.12.)

Joyce says that when the second shift officers clocked-in, he continued to ask for help, but none of the unit officers would acknowledge him except to say that they

would write a misconduct if Joyce continued to bother them.  Joyce says that COs Golladay and Reinfelder specifically told Joyce that if he continued to press his emergency button, they would put him in segregation.  (*Id.*)   When Joyce was released for dinner, he went directly to Reinfelder and told him that he could not breathe and needed help for his asthma.  CO Reinfelder responded by stating, "O[h] yeah, I've been meaning to do something about that."  (*Id.*)

After his interaction with CO Reinfelder, Joyce went to chow hall to see if he could find help there.  Joyce spoke with Sgt. Weston about his medical issues.  Weston allegedly told Joyce that it was not Weston's problem, and that Joyce needed to take the issues up with his unit staff.  (*Id.*)  Joyce then returned to his unit and spoke with CO Reinfelder again, telling him what Sgt. Weston had said.  Reinfelder responded, "yeah right" and told Joyce to either go into lockdown or go to segregation.  (*Id.*)  When Joyce stressed that he needed help, Reinfelder said that he would call someone.  (*Id.*)

Later that evening, Joyce says that he was called out to get his medication from health services.  Joyce says that RN Smith-Reinfelder was handing out the medication, and that CO Reinfelder was seated next to her.  (*Id.*)  Joyce told RN Smith-Reinfelder that he had been trying to go to health services to receive treatment for his difficulties breathing, and that CO Reinfelder refused to allow him to go or to call health services on Joyce's behalf.  CO Reinfelder claimed that he did call, but RN Smith-Reinfelder said that she never received a call. (*Id.*, PageID.13.)  CO Reinfelder then stated that he was busy with other things, but that it did not matter because RN Smith-Reinfelder was there now.  (*Id.*)  RN Smith-Reinfelder told Joyce to wait

until she was finished handing out medication, and that she would call him over. Joyce told her that he had been having trouble breathing all day.  Instead of helping him, he says that RN Smith-Reinfelder left.  (*Id.*)

Approximately thirty minutes after Joyce's encounter with RN Smith-Reinfelder, he says that he was called to health services.  Although CO Golladay had refused to call health services for Joyce, and although Golladay refused to put the time on Joyce's pass to health services, Golladay signed the pass.  (*Id.*)  Joyce says that when he arrived at health services, RN Smith-Reinfelder was not there.  He says that his nebulizer breathing tube and medication treatments were sitting on the COs desk, and that he immediately took the treatments despite health service's failure to follow protocol.  (*Id.*)  When he tried to check in with health services after he took the treatments, no one was there to evaluate him.

### III.    Failure to State a Claim

Defendants first argue that this Court should dismiss CO Paquin, ADW Batho, RUM Corey-Spiker, GC McLean, and HCUM LaPlaunt pursuant to Fed. R. Civ. P. 12(b)(6) because Joyce failed to set forth any facts in his Complaint that establish their personal involvement in unconstitutional conduct.  (ECF No. 25, PageID.214.)

The Federal Rules provide that a claim may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Put

differently, if plaintiffs do "not nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In determining whether a claim has facial plausibility, a court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Those factual allegations "must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 562).

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.* When, as here, the Complaint was filed by a pro se plaintiff, the court must read the Complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Joyce organized his complaint into two sets of deliberate indifference claims, summarized in the table below.

| Claim Number | Defendant(s) | Claim | Date or Date Range of Incident(s) | Factual Allegations |
|---|---|---|---|---|
| One<br><br>(ECF No. 1, PageID.8-10.) | Sgt. Anderson, CO Collins, RN Hence, RN Cicco, CO Bergeron, PC Plumm, CO Salomon[3] | Eighth Amendment Deliberate Indifference | June 21, 2020 – July 3, 2020 | -June 21, 2020: Joyce told Sgt. Anderson about his medical conditions and asked for his inhaler and medication, Anderson told him to talk to the Property Officer<br>-June 21, 2020: When CO Collins took Joyce to his cell in administrative segregation, Joyce asked to open a window and told Collins of his asthma. Collins tried but did not succeed in opening a window but told Joyce he would have someone else come to open it, and that a nurse would come by Joyce's cell<br>-June 21, 2020: RN Hence came by Joyce's cell. Joyce told her that he did not have his inhaler or medication. CO Collins later told Joyce that Hence had relayed his problems to another staff member.<br>-June 21, 2020: Joyce told RN Cicco about his breathing problems. RN Cicco laughed and used a racial slur against Joyce.<br>-June 22, 2020: When CO Bergeron went through Joyce's property and collected the items Joyce needed for his stay in segregation, Bergeron collected an empty inhaler and empty pill packets.<br>-June 22, 2020: When CO Collins brought Joyce the property CO Bergeron had collected, Joyce informed Collins, PC Plumm, and CO Salomon that he could not breathe and that he needed his inhaler and medication.<br>-June 22, 2020: Joyce wrote multiple requests to health services. RN Cicco took one of the requests, waved at Joyce, and laughed. |
| Two<br><br>(Id., PageID.11-13.) | Sgt. Blemke, CO Trestrail, CO Golladay, CO Reinfelder, RN Smith-Reinfelder | Eighth Amendment Deliberate Indifference | July 19, 2020 | -Joyce told Sgt. Blemke that he had asthma and was having trouble breathing. Blemke told Joyce to address the matter with staff in his housing unit.<br>-Joyce told CO Trestrail about his asthma and breathing problems, Trestrail laughed, told Joyce to go back to his cell, and said that he (Trestrail) would contact health services. Though Joyce continued to |

---

[3]      In their motion for summary judgment, Defendants include RN Smith-Reinfelder as a Defendant under this first set of claims. (ECF No. 25, PageID.221.) However, Joyce's only mention of Smith-Reinfelder with respect to this first set of claims was that she picked up his health services request on June 24, 2020. Joyce then received his inhaler and medications. (ECF No. 1, PageID.9.) As such, the undersigned does not read Joyce's complaint as asserting a claim of deliberate indifference against RN Smith-Reinfelder based on their June 24 interaction. Joyce's statement in his grievance <u>URF 20-06-1776-22D</u>, discussed in more detail below, that "[i]f Ms. Smith hadn't helped [him], [he] could have died," seems to support this reading. (*See* ECF No. 25-3, PageID.263.)

| Claim Number | Defendant(s) | Claim | Date or Date Range of Incident(s) | Factual Allegations |
|---|---|---|---|---|
| | | | | press the emergency button in his cell to remind Trestrail that he needed help, Trestrail ignored him. <br> -Trestrail continued to press the emergency button for help throughout the day.  COs Golladay and Reinfelder that told Joyce that if he continued to press the button, they would put him in segregation.  When Joyce was released from his cell for dinner, he complained to CO Reinfelder who admitted that he meant to reach out to someone about Joyce's asthma. <br> -Joyce told Sgt. Weston about his medical issues. Weston told Joyce to take it up with housing unit staff. <br> -Joyce again told CO Reinfelder what Weston had said. CO Reinfelder did not believe Joyce, told Joyce to lockup and said that he (Reinfelder) would call health services. <br> -Joyce told RN Smith-Reinfelder that he had been having breathing problems.  Smith-Reinfelder told Joyce he would have to wait until she was done handing out prisoners' medications.  When Joyce was allowed to go to health services, his treatments were laid out on the counter, and Smith-Reinfelder was nowhere to be found. |

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right."  *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)).  When a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints.  *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir.

2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

As indicated by Defendants, Joyce did not set forth any factual allegations against CO Paquin, ADW Batho, RUM Corey-Spiker, GC McLean, or HCUM LaPlaunt.  As such, the undersigned respectfully recommends that the Court dismiss Paquin, Batho, Corey-Spiker, McLean, and LaPlaunt from this case.

## IV.    Summary Judgment Based on Exhaustion

Defendants next argue that the Court should grant summary judgment in their favor as to several of Joyce's deliberate indifference claims on the grounds that Joyce failed to exhaust the available administrative remedies.  Specifically, Defendants assert that Joyce failed to exhaust his deliberate indifference claim against PC Salomon for ignoring his pleas on June 22, 2020, and his deliberate indifference claims against Sgt. Blemke, CO Trestrail, CO Golladay, CO Reinfelder, Sgt. Weston, and RN Smith-Reinfelder for ignoring his pleas on July 19, 2020.

13

### a. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[4] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### b. Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549

---

[4]     If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury.  *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue.  (*Id.*)  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence.  *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91

(2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners

in MDOC custody at the time relevant to this complaint.  Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution.  *Id.* at ¶¶ Q, W.  The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent.  *Id.* at ¶ W.  The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  MDOC Policy Directive 03.02.130 at ¶¶ U, DD.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances.  *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ U, HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days

17

after the date the Step II response was due.  *Id.*  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhaustion those procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too.").  However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all*

18

relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[5]

### c. Exhaustion Analysis

The Step III Grievance Report provided by Defendants reflects that Joyce filed three grievances in late June and July of 2020 that he pursued through Step III of the process. (*See* ECF No. 25-3, PageID.241.) The first of these grievances, URF 20-06-1776-22D, concerned Mease's health issues and attempts to obtain help while in administrative segregation from June 21, 2020 to June 24, 2020. (*Id.*, PageID.263.) The second grievance, URF-20-07-1900-28E, pertained to a misconduct ticket issued by CO Bergeron — it did not pertain to Joyce's deliberate indifference claims. (*Id.*, PageID.257.) Finally, the third grievance, URF-20-07-1974-28E, concerned Mease's health issues and attempts to obtain help on July 19, 2020. (*Id.*, PageID.252.)

---

[5] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

Although Defendants concede that URF 20-06-1776-22D was denied on its merits at all three steps of the grievance process, and that Joyce therefore exhausted the claims therein, Defendants say that the grievance did not contain a claim against PC Salomon.  (ECF No. 25, PageID.221.)  In his Step I form for URF 20-06-1776-22D, Joyce stated:

> On 6-21-2020 at approx. 5:30 I was taken from Lime Unit URF East to segregation.  This was for a misconduct hearing, this was done by Sgt. Anderson's supervision.  Upon ent[ry] I was strip searched and ask[ed] the basic [illegible] questions, allerg[ies], heart problems, high blood pressure, asthma, food restriction, etc.  At the time I responded to all questions and told both the Sgt. and Desk Officer and Segregation Officer that I take medication for all three.  I also had my detail in my pocket.  I asked if I could take my asthma inhaler with me as they told me I would be staying.  The answer was and I quote "You have to get with the property Officer for that" end quote.  The Nurse (check records for name) came and I told her I was having a problem breathing and I need my inhaler, her response was "I'll tell someone."  She left.  I continued to tell each Sgt. and/or Officer that came by my cell that the room was to[o] hot and I couldn't breathe, and that I needed my inhaler or a breathing treatment.  No help was given 6-21-2020.  On 6-22-2020 around 5:00 it was explained to me that a CO Bergeron who was assigned as the Property Officer had went through my items again and sent these items back to my segregation cell.  These items were state property clothing, and empty used dated pill packages and a[n] empty inhaler.  I told the CO Collins that this was the wrong medication and Sgt. when they made rounds.  I also told my Case Manager, nurses, Nurse Cicka (Cicco) she laughed.  I also showed the empty wrong containers to the nurses and PC Plum.  I then wrote a kite to CO Bergeron and Health Services and Mental Health.  Still no help and by that time I was w[h]eezing and cough[ing] flem.  Still no help on 6-23-2020.  Also other inmates began calling out for my help still no help or assistance came.  Finally at the end of 6-24-2020 2nd shift I was given my rescue inhaler and rescue medication.  I also had to beg for a breathing treatment that came at 8:45 that evening.  There are more details to the withholding of my medication and the incident as a whole.  I have documented the most part and kited and showed certain individuals the game that the Property Officer played with my medication and my life.  This needs to be addressed this was life threatening lets move forward and document who should have done

what to avoid putting my [life] at risk. (If Ms. Smith hadn't helped me,
I could have died back here.)

(ECF No. 25-3, PageID.263.)  The undersigned agrees that this grievance did not
exhaust a claim against PC Salomon.  Joyce did not name Salomon in his Step I
grievance, nor was Joyce's reference to "each Sgt. and/or Officer that came by [his]
cell" sufficient to identify a claim against Salomon.  Because URF 20-06-1776-22D
did not exhaust Joyce's claim against PC Salomon, the undersigned respectfully
recommends that this Court grant summary judgment in Salomon's favor and
dismiss him from the case.

Defendants also assert that URF-20-07-1974-28E did not serve to exhaust
Joyce's deliberate indifference claims arising out of his July 19, 2020 medical
problems because the grievance was rejected as untimely at Steps II and III of the
grievance process.  A review of Joyce's Step I grievance response reflects that Joyce
received the response on July 30, 2020.  (*Id.*, PageID.252.)  A review of Joyce's Step
II and III grievance appeal form reflects that the Step II appeal was due on August
14, 2020, and that Joyce authored the appeal on August 26, 2020.  (*Id.*, PageID.250.)
As such, Joyce's appeal was clearly outside of the time allowed by MDOC Policy.
Nevertheless, there is a genuine issue of fact as to whether MDOC officials rendered
the grievance process unavailable to Joyce.

Although Joyce's Step II appeal was untimely, Joyce began his Step II appeal
by stating, "[T]he Grievance Coordinator after 3 kites to M. McLean finally sent the
Step 2 & 3 appeal form." (*Id.*)  Joyce also said that he alerted a PC about his requests
for an appeal form, and the PC told him to be patient.  (*Id.*)  Construing the facts in

21

the light most favorable to Joyce, it appears that Joyce did everything in his control to properly exhaust the claims in <u>URF-20-07-1974-28E</u>, but that GC McLean did not provide him with the forms required to timely appeal the Step I response.  Defendants do not address this issue in their motion for summary judgment.  Accordingly, the undersigned respectfully recommends that the Court deny summary judgment with respect to Joyce's claims against Sgt. Blemke, CO Trestrail, CO Golladay, CO Reinfelder, and RN Smith-Reinfelder for acting with deliberate indifference to his medical needs on July 19, 2020.

## V.     Recommendation

The undersigned respectfully recommends that the Court: (1) grant Defendants' motion to dismiss with respect to CO Paquin, ADW Batho, RUM Corey-Spiker, GC McLean, and HCUM LaPlaunt because Joyce failed to set forth specific factual allegations against them in his complaint, (2) grant Defendants' motion for summary judgment with respect to Joyce's deliberate indifference claim against PC Salomon because there are no genuine issues of fact and Joyce failed to exhaust the claim, and (3) deny Defendants' motion for summary judgment with respect to Joyce's claims against Sgt. Blemke, CO Trestrail, CO Golladay, CO Reinfelder, and RN Smith-Reinfelder for acting with deliberate indifference to his medical needs on July 19, 2020 because there is a genuine issue as to whether the grievance process was available to Joyce.

If the Court accepts this recommendation, CO Paquin, ADW Batho, RUM Corey-Spiker, GC McLean, HCUM LaPlaunt, and PC Salomon will be dismissed from

the case.  Joyce's claims against Sgt. Anderson, CO Collins, RN Hence, RN Cicco, CO Bergeron, and PC Plumm for acting with deliberate indifference to his serious medical needs while he was in segregation, as well as Joyce's claims against Sgt. Blemke, CO Trestrail, CO Golladay, CO Reinfelder, and RN Smith-Reinfelder for acting with deliberate indifference to his serious medical needs on July 19, 2020 will remain.

Dated:   July 25, 2022                                   /s/ *Maarten Vermaat*
                                                        MAARTEN VERMAAT
                                                        U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).