UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CEDRIC R. JOYCE, #251901,

               Plaintiff,

    v.

DENNIS BERGERON, et al.,

               Defendants.

_____/

Case No. 2:21-cv-70

Hon. Jane M. Beckering
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.    Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment.  (ECF No. 39.)

Plaintiff — state prisoner Cedric Raynard Joyce — filed suit pursuant to 42 U.S.C. § 1983 on April 8, 2021.  In his verified complaint, Joyce claimed that while he was confined at Chippewa Correctional Facility (URF) in Kincheloe, Michigan, URF employees and health services staff acted with deliberate indifference to his serious medical needs.[1]  Specifically, Joyce said that while he was in administrative

---

[1]    Joyce named eighteen Defendants in his Complaint.  They are: (1) Corrections Officer (CO) Bergeron, (2) Sergeant (Sgt.) Anderson, (3) CO Collins, (4) CO Paquin, (5) Prison Counselor (PC) Salomon, (6) PC Plumm, (7) Assistant Deputy Warden (ADW) Batho, (8) Resident Unit Manager (RUM) Corey-Spiker, (9) CO Trestrail, (10) Grievance Coordinator (GC) McLean, (11) CO Reinfelder, (12) Sgt. Weston, (13) Sgt. Blemke, (14) CO Golladay, (15) Registered Nurse (RN) Hense, (16) Health Care Unit Manager (HCUM) LaPlaunt, (17) RN Reinfelder, and (18) RN Cicco. (ECF No. 1, PageID.3-7.)

segregation from approximately June 21, 2020 to June 25, 2020, Defendants failed to provide him with his rescue inhaler or "Keep on Person" medication and ignored his pleas for help when breathing became progressively more difficult and painful for him.  (ECF No. 1, PageID.8-10.)   Joyce further asserted that he had difficulty breathing on July 19, 2020, and that Defendants again refused to help him and neglected to follow protocols when he was eventually permitted to go to health services.  (*Id.*, PageID.11-13.)

On February 18, 2022, Defendants moved to dismiss and for summary judgment based on Joyce's failure to exhaust his administrative remedies prior to filing suit.  (ECF No. 24.)   On July 25, 2022, the undersigned issued an R&R recommending that the Court dismiss all but Joyce's claims against Sgt. Anderson, CO Collins, RN Hense,[2] RN Cicco, CO Bergeron, and PC Plumm for acting with deliberate indifference to his serious medical needs while Joyce was in segregation; and against Sgt. Blemke, CO Trestrail, CO Golladay, CO Reinfelder, RN Reinfelder (nee Smith)[3] and Sgt. Weston[4] for acting with deliberate indifference to Joyce's

---

[2]   There has been some confusion as to the spelling of RN Hense's name throughout the case.  Per RN Hense's signed affidavit, "Hense" is the correct spelling. (ECF No. 41-1.)

[3]   RN Reinfelder has been referred to as "RN Smith" and "RN Smith-Reinfelder" throughout this case.  But RN Reinfelder's affidavit suggests that her last name is now simply "Reinfelder."  (ECF No. 40-14 (RN Reinfelder Aff.).)

[4]   Sgt. Weston's name was mistakenly omitted from the undersigned's conclusion to the July 25, 2022 R&R.  (ECF No. 29, PageID.308-309.)  Nevertheless, the table summarizing the undersigned's recommendations included a recommendation that the Court deny Defendant's motion for summary judgment as to Sgt. Weston.  (*Id.*, PageID.289 (Table).)  And that recommendation is consistent with the undersigned's determination that there were genuine issues of fact bearing on whether the grievance process was available to Joyce in relation to his claims arising out of his

serious medical needs on July 19, 2020.  (ECF No. 29, PageID.308-309.)  The Court
approved and adopted the undersigned's R&R on August 24, 2022.  (ECF No. 30,
PageID.310-311.)

All remaining defendants except CO Collins and Sgt. Weston now move for
summary judgment on the merits of Joyce's claims.  (ECF No. 39.)  Defendants
contend that Joyce cannot establish either element of his deliberate indifference
claims.  Defendants aver that Joyce did not have sufficiently serious medical needs
while he was in segregation on July 19, 2020.  They further assert that Joyce was
provided with treatment and has not shown that the treatment was inadequate.
Finally, Defendants aver that they did not observe Joyce in distress on the relevant
dates and were not aware of Joyce's medical needs, and, therefore, that they did not
act with deliberate indifference to his needs.

The undersigned respectfully recommends that the Court deny Defendants'
motion for summary judgment as to Joyce's claims against Sgt. Anderson, RN Hense,
RN Cicco, CO Bergeron, PC Plumm, Sgt. Blemke, CO Trestrail, CO Golladay and CO
Reinfelder, but grant Defendants' motion for summary judgment as to Joyce's claim
against RN Reinfelder.  In the undersigned's opinion, there are genuine issues of
material fact bearing on whether Joyce had sufficiently serious medical needs, and
whether Defendants, aside from RN Reinfelder, acted with deliberate indifference to
those needs.  In the undersigned's opinion, there are no genuine issues of material

---

July 19, 2020 interactions with staff.  (*Id.*, PageID.307-308.)  Thus, as reflected in the
docket sheet, Sgt. Weston remains a defendant in this case.

fact bearing on the subjective component of Joyce's claim against RN Reinfelder because Reinfelder's alleged conduct does not display a mental state akin to criminal recklessness.

## II.    Factual Allegations

As set forth in the undersigned's July 25, 2022 R&R, Joyce's factual allegations are as follows:

Joyce says that on June 21, 2020, he was taken to segregation pending a misconduct hearing. (ECF No. 1, PageID.8.) That misconduct hearing was set for June 29, 2020. When Joyce arrived at segregation, he was strip searched, asked about any health concerns he might have, and asked what meal he receives. (*Id.*) Joyce says that he told Sgt. Anderson and other nearby COs that he had problems with asthma, high blood pressure, and seizures, among other things. (*Id.*) Joyce asked if he could have his inhaler back, as he had been experiencing problems with his breathing and the temperature was above ninety degrees. (*Id.*) Joyce was told that he could not have his inhaler, and that he would have to talk to the Property Officer.

Joyce says that CO Collins then took him to his cell in segregation. When they arrived, Joyce says he asked Collins to open a window because the heat was unbearable. (*Id.*) Collins said "yeah maybe" and returned twenty-five minutes later with a window crank. (*Id.*) However, the window crank was too short, and Collins could not get the window open. (*Id.*) When Joyce told Collins that he has asthma, did not have his inhaler, and would not be able to breathe with the window closed, Collins told Joyce: "I'll tell somebody about the window and the nurse will be by." (*Id.*) Joyce says that he gave staff his detail, which he had to keep in his pocket to receive his diet and special accommodations.

Joyce says that RN [Hense] came by later and Joyce told her that he was having breathing problems, did not have his inhaler, and did not have his keep on person medication for his high blood pressure and heart problems. (*Id.*) Collins told Joyce that RN [Hense] relayed that information to another staff member. Joyce says that he continued to tell any staff members that came by that he needed assistance. (*Id.*)

One of the staff members who passed by was RN Cicco. Joyce says that he had previously written a grievance against her for

4

threatening to spit in his drinking and medication cup, and that she was previously "written up" for withholding inmate's medication and placing her unwashed hands inside prisoner's pill cups, among other things. (*Id.*)  But Joyce says that his breathing problems were so bad by this point that he asked Cicco for help.  Rather than helping, Cicco allegedly laughed at Joyce and used a racial slur against him.  (*Id.*)

On June 22, 2020, CO Bergeron performed a shakedown of Joyce's property to retrieve Joyce's inhaler, medication, and state-issued clothing and hygiene products. (*Id.*, PageID.9.)  Joyce says that prior to the shakedown, he had kited Bergeron about his inhaler and medication. (*Id.*, PageID.8.)  But the inhaler that Bergeron sent back to Joyce had no canister, and the pill packets that Bergeron sent were empty.  (*Id.*, PageID.9.)  Joyce says he informed Collins, Plumm . . . and a non-Defendant nurse that his inhaler and pill packets were empty but that they did not help him.  (*Id.*)  Joyce then wrote two medical requests.  He says that RN Cicco took the first request while waving and laughing at Joyce.  Joyce gave the second request to an unknown Case Manager. (*Id.*)  The Case Manager reported back that URF health care had the request, but that the Case Manager could not retrieve the medication because he is not a medical provider.  (*Id.*)

Joyce says that on June 23, 2020, he was barely breathing.  (*Id.*)  He says that he had to lay on the floor next to the door in order to get any air to breathe.  Joyce says he was coughing and wheezing, and asking other inmates to get him medical help, all to no avail.  On June 24, 2020, Joyce wrote another health care request, which he says Nurse [Reinfelder] picked up.  (*Id.*)  By this time, Joyce says that his chest pain was excruciating, and he had lost consciousness multiple times. Joyce says that he was finally given an inhaler and medication on June 24 or June 25, 2020. But despite his request he was never seen by a doctor. (*Id.*)

According to Joyce, he remained in administrative segregation until July 3, 2020.  (*Id.*)  When he was released, he was given a property receipt to sign.  Joyce told the officer that there were discrepancies between the property in his pack up and the property on the receipt. (*Id.*)  The non-Defendant officer gave Joyce his bag and told him to go. Joyce says that while unpacking his bag, he found his original inhaler and medication.  (*Id.*, PageID.10.)  By then, Joyce had already initiated the grievance process.

After he was released from segregation, Joyce says that he continued to have breathing problems and chest pain.  (*Id.*, PageID.11.) Joyce says that he submitted several kites about his medical issues.

Although Joyce sent some of these kites to mental health services in case his mental health medication was playing a role in his problems, health services intercepted those kites. (*Id.*) Joyce says that health services refused to pass on the information and sent back untruthful replies.

Joyce says that the morning of July 19, 2020, he was having breathing difficulties. (*Id.*) He says that he used his inhaler but had to walk two blocks to chow hall and back to his housing unit. Joyce says that when he arrived at the chow hall he was light-headed and completely out of breath. (*Id.*) Joyce approached the officer desk in the chow hall and told Sgt. Blemke that he was having difficulties breathing, and that he had serious asthma. Blemke allegedly told Joyce that he would have to go back to his housing unit and tell the officers there about his issues. (*Id.*)

When he arrived back at his housing unit, Joyce says that he told CO Trestrail that he was having trouble breathing and needed to go to health services. Instead of helping, CO Trestrail laughed at Joyce, directed Joyce to go back to his cell, and told Joyce that he would contact health services. (*Id.*) Joyce says he reminded Trestrail that he needed help several times by using the emergency button on the wall of his cell. Joyce's cellmates also told Trestrail that Joyce needed help, to no avail. (*Id.*, PageID.12.)

Joyce says that when the second shift officers clocked-in, he continued to ask for help, but none of the unit officers would acknowledge him except to say that they would write a misconduct if Joyce continued to bother them. Joyce says that COs Golladay and Reinfelder specifically told Joyce that if he continued to press his emergency button, they would put him in segregation. (*Id.*) When Joyce was released for dinner, he went directly to Reinfelder and told him that he could not breathe and needed help for his asthma. CO Reinfelder responded by stating, "O[h] yeah, I've been meaning to do something about that." (*Id.*)

After his interaction with CO Reinfelder, Joyce went to chow hall to see if he could find help there. Joyce spoke with Sgt. Weston about his medical issues. Weston allegedly told Joyce that it was not Weston's problem, and that Joyce needed to take the issues up with his unit staff. (*Id.*) Joyce then returned to his unit and spoke with CO Reinfelder again, telling him what Sgt. Weston had said. Reinfelder responded, "yeah right" and told Joyce to either go into lockdown or go to segregation. (*Id.*) When Joyce stressed that he needed help, Reinfelder said that he would call someone. (*Id.*)

Later that evening, Joyce says that he was called out to get his medication from health services. Joyce says that RN [Reinfelder] was handing out the medication, and that CO Reinfelder was seated next to her. (*Id.*)  Joyce told RN [Reinfelder] that he had been trying to go to health services to receive treatment for his difficulties breathing, and that CO Reinfelder refused to allow him to go or to call health services on Joyce's behalf.  CO Reinfelder claimed that he did call, but RN [Reinfelder] said that she never received a call. (*Id.*, PageID.13.)  CO Reinfelder then stated that he was busy with other things, but that it did not matter because RN [Reinfelder] was there now. (*Id.*)  RN [Reinfelder] told Joyce to wait until she was finished handing out medication, and that she would call him over. Joyce told her that he had been having trouble breathing all day. Instead of helping him, he says that RN [Reinfelder] left. (*Id.*)

Approximately thirty minutes after Joyce's encounter with RN [Reinfelder], he says that he was called to health services.  Although CO Golladay had refused to call health services for Joyce, and although Golladay refused to put the time on Joyce's pass to health services, Golladay signed the pass. (*Id.*)  Joyce says that when he arrived at health services, RN [Reinfelder] was not there.  He says that his nebulizer breathing tube and medication treatments were sitting on the COs desk, and that he immediately took the treatments despite health service's failure to follow protocol. (*Id.*)  When he tried to check in with health services after he took the treatments, no one was there to evaluate him.

(ECF No. 29, PageID.290-295.)

### III.    Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421

F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV.    Deliberate Indifference

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective

component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

The subjective component of a deliberate indifference claim requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. In other words, deliberate indifference involves a state of mind "akin to criminal recklessness." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

As set forth above, Joyce asserts that Defendants were deliberately indifferent to his medical needs while he was in segregation from June 21, 2020 to June 25, 2020, and again on July 19, 2020.

9

### a. Administrative Segregation Claims (June 21 to June 25, 2020)

Joyce first alleges that Defendants Anderson, Hense, Cicco, Bergeron, and Plumm were deliberately indifference to his serious medical needs while he was in segregation.  Defendants aver that Joyce cannot establish the objective or subjective components of these claims.

### i. Objective Component

Defendants argue that Joyce cannot establish the objective component of his first set of deliberate indifference claims because Joyce's medical needs were not obvious.  Furthermore, Defendants argue that Joyce received medical treatment when he was given his rescue inhaler three or four days after arriving in segregation, and that Joyce was therefore required to establish that the delay in treatment was detrimental to Joyce's health.

In his verified complaint, Joyce alleged that he has asthma and high blood pressure, and that he experiences seizures.  (ECF No. 1, PageID.8.)  Joyce said that he was placed in segregation on June 21, 2020.  He said that he began having difficulty breathing from the time he entered his segregation cell, which was above ninety degrees in temperature.[5]  (*Id.*)  Even so, Joyce was not provided with his rescue inhaler or other medications[6] until June 24 or June 25, 2020.  By that time, Joyce

---

[5]    Joyce also says that he had a medical detail related to his propensity for heat-related illness.  (ECF No. 40-2, PageID.431 (Joyce's Dep. Tr.).)

[6]    Joyce's medical records reflect that he was medicated for his seizure disorder and for heart disease.  (*See* ECF No. 40-9, PageID.555.)

alleged to have lost consciousness on multiple occasions.  (*Id.*, PageID.9.)  He said that he could barely breathe.

Joyce's medical records confirm that he has been diagnosed with asthma, hypertension, and epilepsy.  (ECF No 40-9, PageID.572.)  Despite the fact that it is Defendants' burden to establish that there are no genuine issues of material fact with respect to Joyce's claims, Defendants largely disregard Joyce's claims with respect to hypertension and epilepsy.  Defendants focus instead on Joyce's allegations with respect to asthma, which they say are insufficient.  But even if Joyce had only alleged that he suffered from asthma and that his asthma was left untreated for several days, the undersigned finds that there are genuine issues bearing on the objective component of Joyce's segregation-related claims.

"[T]he symptoms of an asthma attack – wheezing, difficulty breathing, tightness in the chest – are quite obvious and recognizable even to a lay person." *Harrison v. Ash*, 539 F.3d 510, 518-19 (6th Cir. 2008).  Joyce alleges that he was experiencing these symptoms,[7] and that he repeatedly lost consciousness.

---

[7]    Defendants emphasize that Joyce "testified that he was 'just a little short of breath' when officers took him to segregation but was <u>not</u> having an asthma attack, just difficulty breathing."  (ECF No. 40, PageID.414 (emphasis in original).)  But Joyce later explained that "[w]hen asthma attacks continue, you just get worse." (ECF No. 40-2, PageID.433.)  Joyce stated:

> The conditions of the heat made my breathing difficult.  When you put me in a hot cell, that [exacerbated] the breathing problem.  When I didn't have a rescue inhaler or any of my other [medications], that caused more of a problem.  When they didn't want to open the window or give me any assistance or give me the breathing treatment, that took it to another level.

(*Id.*)  This testimony is consistent with the allegations in Joyce's complaint.

Defendants Anderson, Hense, Cicco, Bergeron, and Plumm may contend that, per their observations, Joyce was not experiencing these symptoms, but these contentions, at most, create a genuine issue of material fact as to the objective component of Joyce's claims.

Furthermore, Defendants' argument that Joyce ultimately received treatment and was therefore required to establish the detrimental effect of the delay misses the mark.  As explained by the Court in *Blackmore v. Kalamazoo County*, "the 'verifying medical evidence' requirement is relevant to those claims involving minor maladies or non-obvious complaints of a serious need for medical care."  390 F.3d 890, 898 (6th Cir. 2004).  The requirement "does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention."  *Id.*  The question posed by Joyce's complaint is not whether the delay in treatment was detrimental to his health; it is whether leaving Joyce in a hot cell for several days without his rescue inhaler or other medications posed a substantial risk of serious harm.  *Id.* at 899 ("As the Supreme Court has held, the test for deliberate indifference is whether there exists a '*substantial risk* of serious harm,' and does not require actual harm to be suffered." (emphasis in original) (citation omitted) (quoting *Farmer*, 511 U.S. at 837)).  The undersigned finds that there are genuine issues of material fact bearing on this issue, and therefore turns to the subjective component of Joyce's segregation-related claims.

### ii. Subjective Component

With respect to the subjective component of Joyce's segregation-related claims, Defendants aver that Joyce has "no evidence to show that Defendants were aware of a serious medical need" while Joyce was in segregation. (ECF No. 40, PageID.417.) In fact, Defendants say that they were not aware that Joyce was having difficulties breathing at all. (*Id.*) But Joyce's verified complaint paints a different picture.

In his complaint, Joyce alleged that he began informing Defendants that he was having difficulties breathing and needed his inhaler and other medications as soon as he entered administrative segregation. (ECF No. 1, PageID.8.) Even so, Sgt. Anderson allegedly told Joyce that he would have to speak with the Property Officer about his inhaler and medication. (*Id.*) RN Hense allegedly disappeared and did not return to Joyce's cell. (*Id.*) RN Cicco allegedly laughed and called Joyce a racial slur. (*Id.*) For his part, CO Bergeron gave Joyce an empty inhaler and empty pill-packets in place of the requested inhaler and medication. (*Id.*, PageID.9.) And when Joyce told PC Plumm that CO Bergeron had not given him the inhaler and medication that he needed, Plumm did nothing in response. (*Id.*) It was not until June 24 or June 25, 2020, that Joyce said he was finally given his inhaler and medication. (*Id.*) In sum, Joyce alleged that he told Defendants Anderson, Hense, Cicco, Bergeron, and Plumm that he needed his inhaler and medications as he was having trouble breathing, and for at least three days, they ignored him.

Defendants rely primarily on their own affidavits to overcome Joyce's allegations. Those affidavits contain essentially the same assertions from each

13

Defendant: that they "do not recall" Joyce having trouble breathing or having any other obvious medical needs while Joyce was in segregation.  (ECF No. 41-2, PageID.630 (Sgt. Anderson Aff.); ECF No. 41-1, PageID.627 (RN Hense Aff.); ECF No. 40-4, PageID.457 (RN Cicco Aff.); ECF No. 40-5, PageID.460 (CO Bergeron Aff.); ECF No. 40-8, PageID.516 (PC Plumm Aff.).)  In addition to these statements, Defendants rely on the fact that that the URF segregation logbook does not indicate that Joyce was having medical problems or that he had made medical requests.  (ECF No. 40, PageID.412.)  According to CO Bergeron's affidavit, "[i]t is the general and routine practice to include such notations in the logbook of such occurrences if they happen." (ECF No. 40-5, PageID.460.)

In the opinion of the undersigned, these affidavits together with the segregation logbook do not overcome, but rather, create a genuine issue of material fact.  Joyce says that he informed Defendants Anderson, Hense, Cicco, Bergeron, and Plumm that he was having trouble breathing and needed his inhaler and other medications; Defendants' affidavits do little more than deny Joyce's allegations.  This is exactly the kind of dispute that the finder of fact is tasked with resolving at trial.  It is not a dispute that is properly resolved by the Court at the summary judgment stage.

In sum, the record reflects that Joyce has diagnoses of asthma, hypertension, and epilepsy.  On June 21, 2020, Joyce was placed in administrative segregation without his inhaler or medication.  Joyce alleges that he repeatedly informed Defendants Anderson, Hense, Cicco, Bergeron, and Plumm that he suffered from

14

asthma, that he was having trouble breathing, and that he needed his rescue inhaler, but that he was not given his inhaler or other medication for at least three days. Defendants deny Joyce's account.  The undersigned finds that there are genuine issues of material fact bearing on whether Joyce had sufficiently serious medical needs from June 21, 2020 to June 25, 2020, and whether Defendants were aware of those needs but chose to ignore them.  The undersigned therefore recommends that the Court deny Defendants' motion for summary judgment as to Joyce's claims against Sgt. Anderson, RN Hense, RN Cicco, CO Bergeron, and PC Plumm for acting with deliberate indifference to his serious medical needs while Joyce was in segregation.

### b.  July 19, 2020 Claims

Joyce next alleges that Defendants Sgt. Blemke, CO Trestrail, CO Golladay, CO Reinfelder, and RN Reinfelder were deliberately indifference to his serious medical needs when he started experiencing breathing difficulties on July 19, 2020. Defendants again aver that Joyce cannot establish the objective or subjective components of his claims.

### i.  Objective Component

As in his first set of claims, Joyce alleged in his second set of claims that he has asthma, and that he was having trouble breathing on July 19, 2020.  (ECF No. 1, PageID.11.)  Joyce says that those breathing difficulties progressed throughout the day.  In response, Defendants say that there is no documentation that Joyce experienced breathing difficulties that day (ECF No. 40, PageID.414), and Defendant

Blemke attests that while he remembers Joyce asking to go to health services, he does not recall Joyce being in any sort of distress (ECF No. 40-10, PageID.611 (Blemke Aff.)).   Defendants point out that by Joyce's own account, he walked a quarter mile to and from the dining hall on the morning of July 19, 2020.  (ECF No. 40, PageID.414.)  And Defendants again contend that Joyce had to place medical evidence in the record verifying the detrimental effect of the treatment he received because Joyce used his inhaler on July 19, 2020 and received a nebulizer breathing treatment the same day.  (*Id.*, PageID.415-416.)

Once again, the undersigned finds that there are genuine issues of material fact bearing on this issue.  Joyce has been diagnosed with asthma and alleges in his verified complaint that he was experiencing symptoms of an asthma attack.[8]  Asthma attacks present obvious, serious medical needs.  *Harrison*, 539 F.3d at 518-19.  Defendants' contentions that they did not observe Joyce to be having breathing difficulties create genuine issues of material fact with respect to this component of Joyce's claims.  Their argument that Joyce's actions "belie the alleged seriousness of his condition," (ECF No. 40, PageID.414-415), is best reserved for the finder of fact.  And again, the question posed by Joyce's complaint is not whether the delay in treatment was detrimental to his health; it is whether ignoring Joyce's complaints and declining to send Joyce to health services posed a substantial risk of serious

---

[8]     The undersigned acknowledges that Joyce had his inhaler on July 19, 2020, and that he used it.  But Joyce's allegations indicate that the inhaler did not stop his asthma attack.  And during his deposition, Joyce attested that "[y]ou can only use inhalers a couple of times[,] or they'll have an adverse effect."  (ECF No. 40-2, PageID.440.)

16

harm.  *Blackmore*, 390 F.3d at 898.  The undersigned therefore turns to the subjective component of the claims arising out of Joyce's July 19, 2020 interactions with Defendants.

### ii. Subjective Component

Defendants' argument with respect to the subjective component of Joyce's July 19, 2020 claims is the same as their argument with respect to the subjective component of Joyce's segregation-related claims; Defendant's claim that "Joyce has no evidence to show that Defendants were aware of a serious medical need . . . and that Defendants disregarded the risk to his health."  (ECF No. 40, PageID.417.)  In fact, all but Sgt. Blemke attested: "I have no knowledge or information about the accusations made by Plaintiff Joyce in this lawsuit.  I do not recall it."  (ECF No. 40-12, PageID.617 (Trestrail Aff.); ECF No. 40-13, PageID.620 (Golladay Aff.); ECF No. 40-11, PageID.614 (CO Reinfelder Aff.); ECF No. 40-14, PageID.623 (RN Reinfelder Aff.).)  As discussed above, Sgt. Blemke attests that he recalls Joyce's request to go to health services but does not recall Joyce being in any kind of medical distress.  (ECF No. 40-10, PaegID.611.)  Instead, Blemke says that when he observed Joyce, "he was talking fine and had no trouble standing."  (*Id.*)

In his complaint, Joyce alleged that he began having breathing issues the morning of July 19, 2020.  (ECF No. 1, PageID.11.)  Joyce said that he immediately began asking URF staff for assistance.   Sgt. Blemke allegedly told Joyce to go back to his housing unit and address his issues with his unit staff.  (*Id.*)  CO Trestrail allegedly laughed at Joyce and told him to go back to his cell.  According to Joyce,

when he and his cellmates continued to ask for help, CO Trestrail ignored them (*Id.*, PageID.12.)  Joyce alleged that once the second-shift staff arrived at URF, he began to ask them for help as well.  CO Golladay and CO Reinfelder allegedly told Joyce that if he continued to bother them, they would put him in segregation.  (*Id.*)  It was not until Joyce spoke to RN Reinfelder that he received his breathing treatment, though Joyce alleged it was "twenty or thirty" minutes before he was called to health services and that RN Reinfelder did not adhere to proper protocol for administering the treatment.  (*Id.*, PageID.13.)

In the opinion of the undersigned, Joyce's allegations that he repeatedly informed Sgt. Blemke, CO Trestrial, CO Golladay, and CO Reinfelder that he was asthmatic and was having serious breathing problems on July 19, 2020, together with Sgt. Blemke's assertion that Joyce appeared to be fine when they interacted, are sufficient to create a genuine issue of material fact as to the subjective component of Joyce's claims against the defendants.[9]  As such, the undersigned respectfully recommends that the Court deny Defendants' motion for summary judgment as to these claims.

But even accepting Joyce's allegations against RN Reinfelder as true, it is the undersigned's opinion that Joyce has not created a genuine issue of material fact as to the subjective component of his claim against RN Reinfelder.  According to Joyce, he was called to healthcare "twenty or thirty" minutes after RN Reinfelder learned

---

[9]    Defendants' assertions that they "do not recall" their interactions with Joyce on July 19, 2020 do little to rebut Joyce's allegations.

that Joyce was having trouble breathing.  (ECF No. 1, PageID.13.)  Joyce complains that RN Reinfelder was not present, so she did not check his temperature, air flow, or oxygen level.  But he also says that RN Reinfelder left him two breathing treatments, and that he took them immediately.  (*Id.*)  In the undersigned's opinion, RN Reinfelder's alleged conduct does not reflect a mental state "equivalent to criminal recklessness." *Santiago*, 734 F.3d at 591 (citing *Farmer*, 511 U.S. at 834, 839-40).  Instead, Joyce's claim against RN Reinfelder sounds in negligence.  As discussed above, deliberate indifference "entails something more than mere negligence." *Farmer*, 511 U.S. at 835; *see also Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").  As such, the undersigned respectfully recommends that there are no genuine issues of material fact with respect to Joyce's claim against RN Reinfelder and recommends that the Court grant Defendants' motion with respect to this claim.

In sum, the record reflects that Joyce has been diagnosed with asthma.  On July 19, 2020, Joyce was experiencing symptoms of an asthma attack.  Joyce alleges that he repeatedly informed Defendants Blemke, Trestrail, Golladay and CO Reinfelder that he was having trouble breathing and needed to go to health services, but that the defendants ignored him.  Joyce also alleges that he told RN Reinfelder about his difficulty breathing, and that twenty or thirty minutes later, he was called to health services.  When he got there, Joyce says he took two breathing treatments, but RN Reinfelder was not present to examine him.  Defendants deny any wrongdoing.  The undersigned finds that there are genuine issues of material fact

bearing on whether Joyce had sufficiently serious medical needs on July 19, 2020, and whether Defendants Blemke, Trestrail, Golladay, and CO Reinfelder were aware of those needs but chose to ignore them.  But the undersigned finds that there are no genuine issues of material fact with respect to RN Reinfelder, and that Joyce's allegations set forth at most a claim of negligence against her.

The undersigned therefore recommends that the Court deny Defendants' motion for summary judgment as to Joyce's claims against Sgt. Blemke, CO Golladay, CO Trestrail, and CO Reinfelder for acting with deliberate indifference to his serious medical needs on July 19, 2020, but grant Defendants' motion for summary judgment with respect to Joyce's claim against RN Reinfelder.

## V.    Qualified Immunity

In addition to arguing that they did not violate Joyce's rights under the Eighth Amendment, Defendants assert that they are entitled to qualified immunity in their individual capacities.  (ECF No. 40, PageID.419-421.)

Defendants' claim for qualified immunity is largely redundant.  After initially arguing that they are entitled to judgment because they did not violate Joyce's Eighth Amendment rights, they argue that they are entitled to qualified immunity because they did not violate Joyce's Eighth Amendment rights.[10]  In any event, it is the undersigned's opinion that RN Reinfelder is entitled to qualified immunity because there are no genuine issues of material fact and RN Reinfelder did not violate Joyce's

---

[10]    In other words, Defendants' do not argue that the rights at issue were not clearly established.

Eighth Amendment rights.  *See Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) ("Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))).  It is the undersigned's opinion that the remaining defendants (Sgt. Anderson, RN Hense, RN Cicco, CO Bergeron, PC Plumm, Sgt. Blemke, CO Trestrail, CO Golladay and CO Reinfelder) are not entitled to qualified immunity at this stage of the case because there are genuine issues of material fact bearing on whether they violated Joyce's clearly established Eighth Amendment rights.

## VI.    Recommendation

The undersigned respectfully recommends that the Court deny Defendants' motion for summary judgment as to Joyce's claims against Sgt. Anderson, RN Hense, RN Cicco, CO Bergeron, PC Plumm, Sgt. Blemke, CO Trestrail, CO Golladay and CO Reinfelder, and grant Defendants' motion for summary judgment as to Joyce's claim against RN Reinfelder.  In the undersigned's opinion, there are genuine issues of material fact bearing on whether Joyce had sufficiently serious medical needs, and whether Defendants, aside from RN Reinfelder, acted with deliberate indifference to those needs.  However, in the undersigned's opinion RN Reinfelder's alleged conduct does not display a mental state akin to criminal recklessness.  Thus, there are no genuine issues of material fact bearing on the subjective component of Joyce's claim against RN Reinfelder.

If the Court accepts this recommendation, Joyce's deliberate indifference claims against Sgt. Anderson, CO Collins, RN Hense, RN Cicco, CO Bergeron and CO Plumm related to his stay in administrative segregation and against Sgt. Blemke, CO Trestrail, CO Golladay, CO Reinfelder and Sgt. Weston related to their July 19, 2020 interactions will remain.


Dated:  June 5, 2023                              /s/ *Maarten Vermaat*
                                                  MAARTEN VERMAAT
                                                  U. S. MAGISTRATE JUDGE


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).